1

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MATTHEW BONZANI,

11           Plaintiff,                          No. CIV S-11-0007 EFB

12       vs.

13   ERIC K. SHINSEKI, Secretary of Veterans
     Affairs; SCOTT HUNDAHL, M.D.; and
14   DOES 1 through 10,

15           Defendants.                         AMENDED ORDER[1]
     _____/

16

17          This action was referred to the undersigned based on the consent of the parties.  *See* Dckt.

18   No. 18; *see also* E.D. Cal. L.R. 305; 28 U.S.C. § 636(c).  Defendants now move to dismiss

19   plaintiff's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of

20   subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.  Dckt. No. 14.  For the

21   reasons stated herein, defendants' motion to dismiss will be granted in part and denied in part.

22   I.      BACKGROUND

23          On December 31, 2010, plaintiff Matthew Bonzani, M.D., a former anesthesiologist at

24   the Sacramento VA Medical Center in Sacramento, California, filed a disability discrimination

25

26          [1] This order amends and supersedes the order filed on September 23, 2011.  Dckt. No. 27.

                                                1

1  complaint against defendants Eric K. Shinseki, Secretary of Veterans Affairs (the "Secretary");

2  Scott Hundahl. M.D., also a doctor at the Sacramento VA Medical Center; and ten unnamed doe

3  defendants, pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. ("Rehabilitation

4  Act"), the Family Medical Leave Act ("FMLA"), and 5 U.S.C. § 2302.  Compl., Dckt. No. 1.

5        The complaint alleges that in April 2009, plaintiff exacerbated an injury in his knee, that

6  he was required by his doctor to have surgery on his knee, and that he had to take four weeks off

7  work to recuperate.  *Id.* ¶¶ 17, 18.  Plaintiff alleges that after he returned to work in July 2009,

8  his supervisor, Dr. Hundahl, yelled at plaintiff on more than one occasion, and told plaintiff that

9  his absence caused working conditions to deteriorate.  *Id.* ¶¶ 19, 20.  Plaintiff further alleges that

10 from July 2009 to March 2010, Dr. Hundahl required plaintiff to work extra on-call shifts, failed

11 to return plaintiff's emails and phone calls, and would not agree to meet with plaintiff.  *Id.* ¶¶ 21,

12 22.  The complaint also alleges that plaintiff was excluded from the interviewing and hiring

13 process for an open Staff Anesthesiologist position in the fall of 2009, and that in December

14 2009, plaintiff resigned from the Chief of Anesthesiology position because Dr. Hundahl's "cold

15 shoulder treatment and other obstructions" made plaintiff unable to perform that role and

16 requested that he be reassigned to the open Staff Anesthesiologist position.  *Id.* ¶¶ 23, 24.

17 Finally, plaintiff alleges that in January 2010, he was notified in writing by Dr. Hundahl that

18 plaintiff's contract would expire on March 18, 2010 and it would not be renewed and that when

19 plaintiff asked Dr. Hundahl why his contract would not be renewed, Dr. Hundahl told him it was

20 because plaintiff took too long to recuperate from his knee surgery and he took too much sick

21 leave.  *Id.* ¶¶ 14, 25.

22 II.   <u>MOTION TO DISMISS</u>

23       Defendants move to dismiss plaintiff's complaint pursuant to Rules 12(b)(1) and

24 12(b)(6), arguing that (1) plaintiff's Rehabilitation Act claim against defendant Hundahl and the

25 unnamed doe defendants must be dismissed since the Secretary is the only proper defendant for a

26 claim brought under the Rehabilitation Act; (2) plaintiff's Rehabilitation Act claim under Section

504, 29 U.S.C. § 794 ("Section 504"), should be dismissed as to all defendants because Section

501, 29 U.S.C. § 791 ("Section 501"), is his exclusive remedy; (3) plaintiff's FMLA claim

against all defendants must be dismissed since plaintiff has not exhausted his administrative

remedies for his FMLA claim and the complaint fails to state a plausible FMLA claim; and (4)

plaintiff's third claim for relief, pursuant to 5 U.S.C. § 2302(b)(12), must be dismissed as to all

defendants since the Civil Service Reform Act ("CSRA") is plaintiff's exclusive remedy for that

cause of action.  Def.'s Mot. to Dismiss, Dckt. No. 14.

Plaintiff opposes the motion, arguing that: (1) both Section 501 and Section 504 of the

Rehabilitation Act are applicable here, and that individuals can be held liable under Section 504;

(2) plaintiff's FMLA claim is legally sufficient because plaintiff has exhausted his administrative

remedies under the FMLA and because plaintiff has adequately stated a FMLA claim; and (3)

plaintiff has exhausted his administrative remedies with regard to his third claim.  Pl.'s Opp.,

Dckt. No. 23.

A.     Standards of Review – Federal Rules of Civil Procedure 12(b)(1) & 12(b)(6)

"Federal courts are courts of limited jurisdiction.  They possess only that power

authorized by Constitution and statute . . . . "  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

U.S. 375, 377 (1994) (internal citations omitted).  Rule 12(b)(1) allows a party to seek dismissal

of an action where federal subject matter jurisdiction is lacking.  "When subject matter

jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden

of proving jurisdiction in order to survive the motion."  *Tosco Corp. v. Cmtys. for a Better Env't*,

236 F.3d 495, 499 (9th Cir. 2001).

A party may seek dismissal for lack of jurisdiction "either on the face of the pleadings or

by presenting extrinsic evidence."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139

(9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  In a factual

challenge, the court may consider evidence demonstrating or refuting the existence of

jurisdiction.  *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir.

1   2008).  "In such circumstances, no presumptive truthfulness attaches to plaintiff's allegations,

2   and the existence of disputed material facts will not preclude the trial court from evaluating for

3   itself the merits of jurisdictional claims."  *Id.*  (quoting *Roberts v. Corrothers*, 812 F.2d 1173,

4   1177 (9th Cir. 1987)).

5          To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint

6   must contain more than a "formulaic recitation of the elements of a cause of action"; it must

7   contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell*

8   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more

9   . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

10  action."  *Id.* (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-

11  236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to

12  'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949

13  (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff

14  pleads factual content that allows the court to draw the reasonable inference that the defendant is

15  liable for the misconduct alleged."  *Id.*  Dismissal is appropriate based either on the lack of

16  cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

17  theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

18         In considering a motion to dismiss, the court must accept as true the allegations of the

19  complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

20  the pleading in the light most favorable to the party opposing the motion, and resolve all doubts

21  in the pleader's favor.  *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869

22  (1969).  The court will "'presume that general allegations embrace those specific facts that are

23  necessary to support the claim.'"  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256

24  (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  However, "[t]he

25  court is not required to accept legal conclusions cast in the form of factual allegations if those

26  conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness*

1   *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable

2   inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643 F.2d 618, 624

3   (9th Cir. 1981).  The court may consider facts established by exhibits attached to the complaint.

4   *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also

5   consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and

6   matters of public record, including pleadings, orders, and other papers filed with the court.  *Mack*

7   *v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

8          B.      Plaintiff's Rehabilitation Act Claim

9                  1.  Section 501 of the Rehabilitation Act Is Plaintiff's Exclusive Remedy

10         Defendants move to dismiss plaintiff's claim under Section 504 of the Rehabilitation Act,

11  arguing that Section 501 of that Act is his exclusive remedy.  Dckt. No. 14-1 at 6.[2]

12         Defendants are correct that, in the Ninth Circuit, it is well established that Section 501 is

13  the exclusive remedy for a federal employee claiming discrimination on the basis of disability.

14  *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413 (9th Cir. 1985) ("[S]ection 501 is the exclusive

15  remedy for discrimination in employment by [a federal employer] on the basis of handicap.").

16  Although Section 501 and Section 504 both prohibit disability discrimination, Section 501

17  "obligates federal employers to provide reasonable accommodation for the handicapped and to

18  develop and implement affirmative action plans for handicapped employees," and creates a

19  private right of action therefore, while "Section 504, in contrast, prohibits exclusion of

20  'otherwise qualified individuals' on the basis of their disability from both federally funded

21  government activities or programs and federally funded non-governmental agencies."  *Johnston*

22  *v. Horne*, 875 F.2d 1415, 1418 (9th. Cir. 1989) (citing *Boyd*, 752 F.2d. at 412 and *Mantolete v.*

23  *Bolger*, 767 F.2d 1416, 1421 (9th Cir. 1985)).  A handicapped individual may bring a private

24  cause of action under Section 504 for disability discrimination against an activity or program that

25

26         [2] For ease of reference, all citations to page numbers are to the page numbers assigned by
the court's case management and electronic case filing (CM/ECF) system.

5

1   receives federal funds, but Section 504 "does not create a private cause of action for handicap

2   discrimination against a *federal employer* by a *federal employee* . . . . Section [501] is the

3   exclusive remedy for handicap discrimination claims by federal employees."[3] *Johnston,* 875

4   F.2d at 1420 (citing *Boyd*, 752 F.2d at 413-14).

5       Because the Ninth Circuit has held that Section 501 is the exclusive remedy for disability

6   discrimination claims by federal employees, plaintiff's claims under Section 504 of the

7   Rehabilitation Act must be dismissed without leave to amend.

8          2.  The Secretary Is the Proper Defendant for Plaintiff's Section 501 Claim

9       Defendants also contend that plaintiff's Section 501 Rehabilitation Act claim against

10  defendant Hundahl and the doe defendants must be dismissed because the Secretary is the only

11  proper defendant for a claim brought under the Rehabilitation Act.  Dckt. No. 14-1 at 6.

12      As provided in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16(c) ("Title

13  VII"), whose procedures have been incorporated into the Rehabilitation Act, an employment

14  discrimination suit under Section 501 must designate the "head of the department, agency, or

15  unit" as the party defendant.  *See* 29 U.S.C. § 794a(a)(1); *Vinieratos v. Dep't of the Air Force*,

16  939 F.2d 762, 772 (9th Cir. 1991); *Mahoney v. U.S. Postal Serv.*, 884 F.2d 1194, 1196 n.1 (9th

17  Cir. 1989) (noting the "Rehabilitation Act simply makes available to victims of handicap

18  discrimination the rights and remedies embodied in Title VII" and that analysis regarding the

19  appropriate defendant is the same under both laws).  The Ninth Circuit has held that "there is no

20  personal liability for employees, including supervisors" in Title VII actions.  *Greenlaw v.*

21  *Garrett*, 59 F.3d 994, 1001 (9th Cir. 1995) (citing *Miller v. Maxwell's Intern, Inc.*, 991 F.2d 583,

22  587-88 (9th Cir. 1993)); *White v. Gen. Servs. Admin.*, 652 F.2d 913, 916-17 (9th Cir. 1981)

23  (holding that Title VII did not contemplate remedies for officials acting in their individual

24  capacities).  Here, the Secretary is the appropriate defendant for plaintiff's disability claims

25  ────────────────

26      [3] Additionally, the Department of Veterans Affairs is not a private employer receiving
    federal funds, nor a government program or activity receiving federal funding.

1    made pursuant to the Rehabilitation Act.

2          Plaintiff cites two cases for the proposition that individual supervisors can be held

3    independently liable for claims arising under the Rehabilitation Act.  Dckt. No. 23 at 3.  Plaintiff

4    asserts that "Section 504 has been interpreted to allow supervisors to be independently liable. . . .

5    Personal liability has attached to individuals responsible for the discriminatory decisions."  *Id.*

6    To the contrary, the cases that plaintiff cites state that "[a] person who discriminates in violation

7    of the Rehabilitation Act may be personally liable if he or she is in a position to accept or reject

8    federal funding."  *Lee v. Trs. of Dartmouth Coll.*, 958 F. Supp. 37, 45 (D.N.H. 1997) (citing

9    *Johnson v. New York Hosp.*, 897 F. Supp. 83, 85 (S.D.N.Y. 1995)).  Plaintiff's argument fails on

10   multiple levels.  First, these two cases involve claims arising under Section 504 against private

11   employers who accept federal funding.  The Department of Veterans Affairs is not a private

12   employer receiving federal funds, nor a program or activity receiving federal funding.  It is an

13   agency of the United States and plaintiff can assert no claim against under Section 504 because

14   Section 501 is his exclusive remedy.  Second, plaintiff does not, and cannot, allege in his

15   complaint that defendant Hundahl or the unnamed doe defendants were in a position to accept or

16   reject federal funding.  Therefore, plaintiff's argument is unavailing.

17         Because the Secretary is the only proper defendant in plaintiff's Section 501

18   Rehabilitation Act claim, that claim against defendant Hundahl and the doe defendants is

19   dismissed without leave to amend.

20         C.      Plaintiff's FMLA Claim

21         Defendants also move to dismiss plaintiff's FMLA claim against all defendants, arguing

22   that the Court lacks subject matter jurisdiction over the FMLA claim because plaintiff has not

23   exhausted his administrative remedies and that the complaint fails to allege sufficient facts to

24   state a plausible FMLA claim.  Dckt. No. 14-1 at 7-8.

25   ////

26   ////

1            1.      Exhaustion

2           The FMLA creates a private right of action in federal court for employees whose

3    employer (including a public agency): (1) interferes with, restrains, or denies their exercise or

4    attempt to exercise their FMLA rights, (2) discharges or otherwise discriminates against them for

5    opposing any practice made unlawful by the FMLA, or (3) discharges or otherwise discriminates

6    against them for filing a charge or instituting a proceeding under the FMLA, for giving

7    information in connection with a FMLA inquiry or proceeding, or for testifying in any FMLA

8    inquiry or proceeding.  29 U.S.C. §§ 2615(a), 2615(b), 2617(a)(2)(A); *Nev. Dep't of Human Res.*

9    *v. Hibbs*, 538 U.S. 721, 726 (2003).  Contrary to defendants' argument otherwise, the FMLA

10   enforcement provision, 29 U.S.C. § 2617, does not contain language that either explicitly or

11   implicitly requires a plaintiff employee to exhaust administrative remedies before filing a FMLA

12   claim in federal court.[4]  Rather, as discussed below, the statute provides a choice for the

13   employee to either file suit on her own behalf, or submit a complaint to the Secretary of Labor.

14   *See generally* 29 U.S.C. § 2617.  Unlike other employment discrimination statutes, "[t]he FMLA

15   is not enforced by the [Equal Employment Opportunity Commission ("EEOC")] or subject to the

16   procedures and remedies of Title VII.  It is enforced by the Wage and Hour Division of the

17   Department of Labor and does not require a plaintiff to exhaust administrative remedies."

18   *Guadalupe v. City of Los Angeles*, 2008 WL 5179034, at *3 (C.D. Cal. Dec. 9, 2008).[5]

19   _____

20      [4] Although defendants cite *Webb v. County of Trinity*, 734 F. Supp.2d 1018, 1031-32
21   (E.D. Cal. 2010), for the proposition that a plaintiff seeking to file suit under the FMLA must
     first seek a right to sue letter from the EEOC, Dckt. No. 14-1 at 7, nothing in 29 § U.S.C. 2617
22   requires plaintiff to obtain such a letter before filing suit.  *Cf. Webb*, 734 F. Supp.2d at 1031-32
     (stating in dicta in an action brought under 42 U.S.C. § 1983 that "[t]he FMLA, unlike § 1983,
23   requires a would-be plaintiff to seek a right to sue letter from the Equal Employment
     Opportunity Commission before filing suit . . . .").

24      [5] Courts have noted other features that distinguish the FMLA from employment
     discrimination statutes as well.  Although the retaliation provisions of the Act are analyzed under
25   the familiar burden-shifting framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792
     (1973), *see Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir.2004) (citing
26   29 U.S.C. §§ 2615(a)(2)), claims for the denial or interference with an employees rights under

1      Pursuant to the Department of Labor regulations implementing the FMLA, an employee

2  seeking to enforce the FMLA "has the choice of: (1) [f]iling, or having another person file on his

3  or her behalf, a complaint with the Secretary of Labor; or (2) [f]iling a private lawsuit pursuant

4  to section 107 of FMLA [29 U.S.C. § 2617]." 29 C.F.R. § 825.400.[6] An employee's private

5  right of action terminates only upon the expiration of the statute of limitations provided in 29

6  U.S.C. § 2617(c),[7] or when the Secretary of Labor files a complaint for damages and/or

7  injunctive relief on behalf of affected employees. 29 U.S.C. § 2617(a)(4), (b), (c), (d).

8      Because 29 C.F.R. § 825.400 explicitly provided plaintiff with two options – to file a

9  complaint with the Secretary of Labor or to file a complaint in court – plaintiff was not required

10  to exhaust the first option before pursuing the latter. Further, even though plaintiff did file an

11  administrative complaint alleging discriminatory conduct, plaintiff's administrative complaint

12  does not preclude him from filing suit in this court for violation of his FMLA rights.

13  Accordingly, defendant's motion to dismiss plaintiff's FMLA claim on the ground that plaintiff

14  failed to exhaust his administrative remedies is denied.

15  _____

16  FLMA are not. "An interference action is not about discrimination, it is only about whether the
    employer provided the employee with the entitlements guaranteed by the FMLA." *Callison v.*
17  *City of Philadelphia*, 430 F.3d 117, 119 (3d Cir.2005).

18      [6] Although 29 C.F.R. § 825.400(a) indicates that an employee has a choice of filing a
    complaint with the Secretary of Labor or filing a private lawsuit, the filing of a complaint with
    the Secretary of Labor does not preclude a civil action. *See Spakes v. Broward Cnty. Sheriff's*
19  *Office*, 631 F.3d 1307, 1309 (11th Cir. 2011). In *Spakes*, the defendant employer argued that 29
    C.F.R. § 825.400 allows an employee to file an agency complaint with the Secretary of Labor *or*
20  a civil suit, but *not both*. *Id.* The court disagreed, finding that "where the statute provides a right
    to a cause of action and lists the limitations, regulations cannot contravene the statute by
21  terminating the right where the statute did not so authorize." *Id.* The Eleventh Circuit affirmed
    the district court's decision that the employee's agency complaint did not bar her from filing suit
22  in federal court. Other than its time limitations, the FMLA places only two limitations on an
    employee's right to file a cause of action, both of which deal with lawsuits brought under various
23  sections of the statute by the Secretary of Labor. Where a statute provides a right to a cause of
    action and lists the limitations, the regulations cannot terminate a statutory right.
24
        [7] Actions brought under 29 § U.S.C. 2617 must be filed within two years of the date of
25  the last event constituting the alleged violation, or within three years of that date for willful
    violations of 29 § U.S.C. 2615. Here, defendants do not contend that plaintiff's complaint is
26  untimely.

1          2.     Plausible FMLA Claim for Interference

2          Defendants also move to dismiss plaintiff's FMLA claim on the ground that plaintiff

3  failed to allege sufficient facts to state a plausible FMLA claim.  Dckt. No. 14-1 at 7-8.

4          "The FMLA creates two interrelated substantive rights: first, the employee has a right to

5  use a certain amount of leave for protected reasons, and second, the employee has a right to

6  return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W.*

7  *Airlines*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a), 2614(a)).  As

8  discussed above, Congress has made it unlawful for an employer to interfere with, restrain, or

9  deny an employee's exercise or attempt to exercise those rights, 29 U.S.C. § 2615(a)(1), or to

10 retaliate or discriminate against an employee for opposing unlawful practices involving protected

11 leave or for participating in FMLA proceedings or inquiries, *id.* §§ 2615(a)(2), (b).

12         Defendants argue that plaintiff's complaint fails to state a plausible "interference" claim

13 under § 2615(a)(1) because the complaint does not allege that plaintiff was denied, or that he

14 was discouraged from taking, FMLA leave.  Dckt. No. 14-1 at 8.  Defendants further contend

15 that plaintiff's complaint fails to state a claim under either § 2615(a)(2) or § 2615(b) since it

16 does not allege that plaintiff was discharged or discriminated against for opposing any unlawful

17 practice under the FMLA.  *Id.* at 8, n.1.

18         Defendants' arguments that plaintiff fails to state a claim under § 2615(a)(2) and §

19 2615(b) are well-taken.  The complaint does not allege any facts demonstrating that plaintiff was

20 discharged or discriminated against for opposing an unlawful practice under the FMLA or for

21 participating in FMLA proceedings or inquiries, nor does it allege any facts that would allow this

22 court to draw such inferences.[8]  *See Bachelder*, 259 F.3d at 1124.  Accordingly, to the extent

23 plaintiff's complaint purports to state a claim under § 2615(a)(2) and/or § 2615(b), those claims

24

25         [8] Although it is not entirely clear from plaintiff's opposition to defendant's motion to
26 dismiss which provision of the FMLA plaintiff intends to proceed under, the opposition only
   addresses claims brought under § 2615(a)(1).  *See* Dckt. No. 23 at 4-5.

1    are dismissed with leave to amend.

2           However, plaintiff's complaint adequately states a claim for "interference" under

3    § 2615(a)(1).  The Department of Labor's FMLA implementing regulations provide that

4    "'[i]nterfering with' the exercise of an employee's rights [under 29 U.S.C. § 2615(a)(1)] would

5    include, for example, not only refusing to authorize FMLA leave, but discouraging an employee

6    from using such leave," and that § 2615(a)(1)'s prohibition on "interference" also prohibits an

7    employer from discriminating or retaliating against an employee for having exercised or

8    attempted to exercise FMLA rights.  29 C.F.R. § 825.220(b), (c).  Such discrimination or

9    retaliation includes "us[ing] the taking of FMLA leave as a negative factor in employment

10   actions, such as hiring, promotions or disciplinary actions . . . ."  *Id.* § 825.220(c); *see also Liu v.*

11   *Amway Corp*., 347 F.3d 1125, 1133 (9th Cir. 2003) (providing that "any violation . . . of the

12   DOL regulations constitute[s] interference with an employee's rights under the FMLA.");

13   *Bachelder*, 259 F.3d at 1122 ("[e]mployers cannot use the taking of FMLA leave as a negative

14   factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA

15   leave be counted under 'no fault' attendance policies").

16          While the complaint does not specifically allege that plaintiff was denied FMLA leave or

17   that he was discouraged from taking FMLA leave, it does allege that defendants discriminated

18   and retaliated against plaintiff for taking FMLA leave and that plaintiff's taking of FMLA leave

19   was used as a negative factor in employment actions against him.  Specifically, plaintiff alleges

20   that after he returned to work in July 2009, his supervisor, Dr. Hundahl, yelled at plaintiff on

21   more than one occasion because he took leave, told plaintiff that his absence caused working

22   conditions to deteriorate, required plaintiff to work extra on-call shifts, failed to return plaintiff's

23   emails and phone calls, and would not agree to meet with plaintiff.  Dckt. No. 1, ¶¶ 19-22, 40-41.

24   Plaintiff further alleges that he was excluded from the interviewing and hiring process for an

25   open Staff Anesthesiologist position in the fall of 2009, and that in December 2009, he resigned

26   from the Chief of Anesthesiology position because Dr. Hundahl's "cold shoulder treatment and

other obstructions" made plaintiff unable to perform that role, and requested that he be

reassigned to the open Staff Anesthesiologist position. *Id.* ¶¶ 23, 24.  Additionally, plaintiff

alleges that in January 2010, he was notified in writing by Dr. Hundahl that plaintiff's contract

would expire on March 18, 2010 and it would not be renewed, and that when plaintiff asked Dr.

Hundahl why his contract would not be renewed, Dr. Hundahl told him it was because plaintiff

took too long to recuperate from his knee surgery and he took too much sick leave. *Id.* ¶¶ 14, 25,

42.

      Defendants argue that the leave plaintiff took "was worker's compensation leave, not

FMLA leave," and that therefore plaintiff's complaint does not and cannot allege that defendants

interfered "with rights *provided by the FMLA*" or that defendants retaliated against plaintiff "for

taking *FMLA leave.*"  Dckt. No. 14-1 at 7; Dckt. No. 24 at 4.  Defendants' focus on this

distinction is appropriate.  In order for plaintiff to state a viable claim under § 2615(a)(1), FMLA

leave must be at issue.  *Litson v. ITS Dep't of Bus. and Industry*, 311 Fed. App'x 1000, 1002 (9th

Cir. 2009) (stating that no cause of action under the FMLA exists if termination results from

absences not protected under the FMLA or from the employee's own performance); *see also*

*Marchisheck v. San Mateo Cnty*, 199 F.3d 1068 (9th Cir. 1999).  "The FMLA provides job

security and leave entitlements for employees who need to take absences from work for personal

medical reasons, to care for their newborn babies, or to care for family members with serious

illnesses." *Liu*, 347 F.3d at 1132 (citing 29 U.S.C. § 2612).  The FMLA entitles qualifying

employees to take unpaid leave for up to 12 weeks each year provided they have worked for the

covered employer for 12 months. *Id.*  FMLA protects leave taken for a "serious health

condition," meaning "an illness, injury, impairment, or physical or mental condition that

involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B)

continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

      However, the FMLA does not require a covered employee to specifically ask for FMLA

benefits nor does an employee need to expressly assert rights under the FMLA or even mention

1   the FMLA.  29 C.F.R. §§ 825.302(c), 825.303(b).  Rather, "[i]t is the employer's responsibility

2   to determine when FMLA leave is appropriate, to inquire as to specific facts to make that

3   determination, and to inform the employee of his or her entitlements."  *Liu*, 347 F.3d at 1134-35

4   (citing *Bailey v. Sw. Gas Co.*, 275 F.3d 1181, 1185 (9th Cir. 2002)).

5   "If the employer lacks sufficient information to determine whether an employee's leave

6   . . . qualifies under the FMLA, the employer should inquire further in order to ascertain whether

7   the FMLA applies"; in response, "an employee must explain the reasons justifying the requested

8   leave so as to allow the employer to determine whether the FMLA is implicated."  *Bailey*, 275

9   F.3d at 1185.  If the employee fails to explain a reason for the leave or does not state a qualifying

10  reason, the employer may deny leave.  *Id.*  An employer also may request a written certification

11  by a health care provider regarding the medical condition necessitating leave.  *Id.* at 1185-86

12  (citing 29 U.S.C. § 2613(a)).  Additionally, an employee worker's compensation absence and

13  FMLA leave may run concurrently.  29 C.F.R. § 825.702 ("An employee may be on a workers'

14  compensation absence due to an on-the-job injury or illness which also qualifies as a serious

15  health condition under FMLA.  The workers' compensation absence and FMLA leave may run

16  concurrently (subject to proper notice and designation by the employer).").

17  Thus, when an employee notifies his employer of his need for leave for a qualified

18  reason, the employer must inform the employee of his FMLA rights and request additional

19  information to process the employee's FMLA claim, including medical certification for the

20  employee's serious health condition.  Here, plaintiff alleges that he was eligible for FMLA leave

21  in April 2009 when he reinjured his knee and that he notified the defendants that his physician

22  required him to have surgery to repair his knee.[9]  Dckt. No. 1, ¶¶ 37-38.  Plaintiff further alleges

23

24      [9] Defendants offer evidence extrinsic to the complaint to demonstrate that plaintiff's
    leave was *not* FMLA leave.  *See* plaintiff's ORM Complaint, Dckt. No. 14-2 at 4-5 (which does
25  not mention FMLA leave) and the declaration of Sue Lewis, the Human Resources liaison
    responsible for reviewing all employee FMLA requests within the Sacramento Valley Division
26  of the Department of Veterans Affairs, Dckt. No. 24-1 at ¶¶ 1, 2 (who characterizes plaintiff's

1   that he took "leave protected by the FMLA." *Id.* ¶ 42.

2        Whether plaintiff will be able to produce evidence sufficient to prove his allegations

3   remains to be seen.  However, plaintiff's allegations must be taken as true in deciding this Rule

4   12(b)(6) motion to dismiss, and those allegations are construed in the light most favorable to

5   plaintiff.  As discussed above, they are sufficient to withstand the motion to dismiss as to claim

6   under § 2615(a)(1).  Accordingly, defendants' motion to dismiss plaintiff's § 2615(a)(1) claim is

7   denied.

8        D.    Plaintiff's Claim Under 5 U.S.C. § 2302(b)(12)

9        Finally, defendants move to dismiss plaintiff's third claim against all defendants, for

10   violation of 5 U.S.C. § 2302(b)(12), arguing that plaintiff's exclusive remedy for that claim is

11   the Civil Service Reform Act ("CSRA").  Dckt. No. 14-1 at 8-9.  Plaintiff alleges he has

12   exhausted the available administrative remedies.[10]  Dckt. No. 23 at 5-6.

13        "The CSRA provides a remedial scheme through which federal employees can challenge

14   their supervisors' 'prohibited personnel practices.'"  *Orsay v. U.S. Dep't of Justice*, 289 F.3d

15   1125, 1128 (9th Cir. 2002) (quoting 5 U.S.C. 2302).  When a claim falls within the scope of the

16   CSRA, the administrative procedures set forth in the CSRA are the employee's *only* remedy.

17   _____

18   injury as an on-the-job-injury and his subsequent leave as worker's compensation leave, and who
     indicates that plaintiff never made a request for FMLA leave nor was he granted FMLA leave).
19   Although matters outside the complaint might properly be considered on the motion attacking
     jurisdiction under Rule 12(b)(1), the court has determined above that exhaustion of
20   administrative remedies is not required under the FMLA.  As to defendants' Rule 12(b)(6)
     motion to dismiss the FMLA claim for failure to meet the pleading requirements, defendants'
21   exhibits, which were not attached to plaintiff's complaint or referenced therein, cannot be
     considered.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).
22        Regardless, absent from Ms. Lewis' declaration is any statement that her department
     advised plaintiff that he was eligible for leave, that her department recognized plaintiff's injury
23   as a FMLA qualified reason to take leave, or that they requested a medical certification from
     plaintiff in order to grant of deny his request for leave.  Similarly absent is any statement from
24   plaintiff concerning plaintiff's filing of a worker's compensation claim or any communication
     with Ms. Lewis' department about classifying or characterizing his leave.  Therefore, even if
25   defendants' exhibits were considered, it could not be definitely determined on this motion that
     plaintiff's leave was *not* FMLA leave.

26        [10] In his opposition, plaintiff did not respond to defendants' CSRA preemption argument.

1    *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008); *see also Bridgeman v. United*

2    *States*, 2011 WL 221639, at *10 (E.D. Cal. Jan. 21, 2011) (the CSRA limits federal employees

3    challenging their supervisors' 'prohibited personnel practices' to an administrative remedial

4    system); *Asahan v. United States*, 2011 WL 3439941, at *5 (D. Haw. Aug. 5, 2011)

5         The Ninth Circuit explained in *Mangano*,

6           If the challenged conduct falls within the scope of the CSRA's
'prohibited personnel practices,' then the CSRA's administrative

7           procedures are [the employee's] only remedy.  The CSRA's
remedial scheme is both exclusive and preemptive because

8           permit[ting] [Federal Tort Claims Act] claims to supplant the
CSRA's remedial scheme would defeat Congress' purpose of

9           creating a single system of procedures and remedies, subject to
judicial review.  Accordingly, where Congress has provided a

10          process for processing prohibited personnel practices, other
potential employee remedies are preempted.

11

12    *Mangano*, F.3d at 1246 (internal citations and quotation marks omitted).  Indeed, a federal

13    employee's personnel-related complaints are preempted "even if no remedy [is] available . . .

14    under the CSRA." *Id.*; *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir. 1999); *see also Bush v.*

15    *Lucas*, 462 U.S. 367, 388 (1983); *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir.

16    1999).

17        To determine whether the CSRA preempts a federal employee's claim, a court need only

18    consider "whether the employee could challenge the action through the CSRA." *Saul v. United*

19    *States*, 928 F.2d 829, 841 (9th Cir. 1991).  "An action is challengeable under the CSRA if: (1)

20    the action qualifies as a 'personnel action' and (2) the personnel action is prohibited per the

21    CSRA." *Asahan*, 2011 WL 3439941, at *5 (quoting *Mangano*, 529 F.3d at 1247-48).

22    "'[P]rohibited personnel practices' [are defined] as any 'personnel action' taken by someone in

23    authority that violates one of twelve enumerated practices." *Mangano*, 529 F.3d at 1247

24    (quoting 5 U.S.C. § 2302(b)).  The twelve enumerated practices are listed at 5 U.S.C.

25    § 2302(b)(1)-(12).

26    ////

1    Here, plaintiff directly challenges the personnel action through the CSRA, alleging that

2    the failure to renew his contract is a prohibited personnel action under 5 U.S.C. § 2302(b)(12).

3    He asserts that he suffered an adverse employment action by the "non-renewal of his

4    employment contract when the usual practice at the Sacramento VA Medical Center is to

5    automatically renew employment contracts of its physicians." Dckt. No. 1, ¶ 46.  Plaintiff

6    alleges that "[d]efendants allowed plaintiff's contract to expire to interfere with his attainment of

7    a military pension in violation of 5 U.S.C. 2301 which requires employment actions to be based

8    on qualifications, experience, performance, and skill." *Id.* at ¶ 47.  Thus, plaintiff challenges his

9    supervisor's action under 5 U.S.C. § 2302(b)(12), one of the CSRA provisions specifically

10   prohibiting certain personnel practices, and his claim is preempted by the CSRA.[11]  *Saul*, 998

11   F.2d at 841.  As amendment would be futile, plaintiff's claim under 5 U.S.C. § 2302(b)(12) is

12   dismissed without leave to amend.  *Dumas v. Kipp*, 90 F.3d 386, 389 (9th Cir. 1996) (holding

13   dismissal without leave to amend is appropriate where further amendment would be futile).

14   ////

15   ////

16   ////

17   ////

18   ////

19

20      [11] In many cases, courts must conduct a more rigorous CSRA preemption analysis to
     determine whether a plaintiff's tort claims or alternative statutory claims fall within the
21   definition CSRA's "prohibited personnel practices" and are thus preempted by the CSRA's
     remedial scheme.  *See Houlihan v. Office of Pers. Mgmt.*, 909 F.2d 383, 384-85 (9th Cir. 1990)
22   (the CSRA preempted a federal employee's Privacy Act claim that alleged the misclassification of
     her employment position, a "prohibited personnel practice" under the CSRA); *Rivera v. U. S.*,
23   924 F.2d 948, 951-52 (9th Cir. 1991) (the CSRA pre-empted a federal employee's FTCA claim
     regarding her supervisor's retaliation after the employee filed a complaint about the supervisor, a
24   "prohibited personnel practice" under the CSRA); *Mangano*, F.3d at 1247 (concluding conduct
     plaintiff complained of under his FTCA claim fell squarely within the definition of a personnel
25   action as a significant change in duties, responsibilities or working conditions under the CSRA).
     Here, however, the claim presents no such nuances.  Plaintiff challenges his supervisor's
26   personnel action directly under the CSRA.

III.     CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendants' motion to dismiss, Dckt. No. 14, is granted in part and denied in part, as follows:

a.  Plaintiff's Section 504 Rehabilitation Act claim is dismissed as to all defendants without leave to amend;

b.  Plaintiff's Section 501 Rehabilitation Act claim against defendant Hundahl and the doe defendants is dismissed without leave to amend;

c.  Plaintiff's claims under § 2615(a)(2) or § 2615(b) of the FMLA are dismissed with leave to amend;

d.  Defendants' motion to dismiss plaintiff's claim under § 2615(a)(1) of the FMLA claim is denied; and

e.  Plaintiff's CSRA claim is dismissed as to all defendants without leave to amend.

2.  Any amended complaint attempting to state a claim under § 2615(a)(2) or § 2615(b) of the FMLA, shall be filed within fourteen days of the date of this order.

DATED:  September 26, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

17