1
2
3
4
5
6
7
8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MATTHEW BONZANI,

11            Plaintiff,                    No. 2:11-cv-0007-EFB

12        vs.

13   ERIC K. SHINSEKI, Secretary of Veterans      ORDER
     Affairs; SCOTT HUNDAHL, M.D.
14
              Defendants.
15   _____/

16
         Plaintiff filed this action asserting claims under the Rehabilitation Act and the Fair
17
     Medical Leave Act.[1]  Defendants have filed a  motion for summary judgment, or in the
18
     alternative, partial summary judgment.  Defs.' Mot. for Summ. J., ECF No. 18.[2]  For the reasons
19
     explained below, defendants' motion is denied.
20
     I.     BACKGROUND
21
         On December 31, 2010, plaintiff Matthew Bonzani, M.D., a former anesthesiologist at
22
     the Sacramento VA Medical Center in Sacramento, California, filed a disability discrimination
23

24        [1]  This action was reassigned to the undersigned based on the consent of the parties.  *See*
     ECF No. 18; *see also* E.D. Cal. L.R. 305; 28 U.S.C. § 636(c).
25
          [2]  For ease of reference, all citations to page numbers reference the page numbers
26   assigned by the court's case management and electronic case file (CM/ECF) system.

complaint against defendants Eric K. Shinseki, Secretary of Veterans Affairs (the "Secretary"); Scott Hundahl. M.D., also a doctor at the Sacramento VA Medical Center; and ten unnamed doe defendants, pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*. ("Rehabilitation Act"), the Family Medical Leave Act ("FMLA"), and 5 U.S.C. § 2302.  Compl., ECF No. 1.

On September 26, 2011, the court granted in part and denied in part defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).  ECF No. 28.  The order dismissed plaintiff's Section 504 Rehabilitation Act claim as to all defendants without leave to amend; dismissed plaintiff's Section 501 Rehabilitation Act claim against defendant Dr. Hundahl without leave to amend; dismissed plaintiff's claim under § 2615(a)(2) or § 2615(b) of the FMLA with leave to amend; and dismissed plaintiff's claim under 5 U.S.C. § 2302 as to all defendants without leave to amend.  *Id.*  The order denied defendants' motion to dismiss plaintiff's claim under § 2615(a)(1) of the FMLA.  *Id.*  Because plaintiff did not file an amended complaint, plaintiff's remaining claims are: (1) a Section 501 Rehabilitation Act claim against the Secretary, and (2) a claim under § 2615(a)(1) of the FMLA against all defendants.  ECF No. 32 at 2.

II.    <u>FACTS</u>

Plaintiff served in the Air Force from July 1, 1986 to February 12, 2007.  Decl. of Joanne Delong ISO Pl.'s Opp'n to Defs.' Mot. for Summ. J. (ECF No. 44-2) Ex. E.  In 1989, while in the service, plaintiff sustained an injury to his left knee.  *Id*.  On July 13, 2007, plaintiff filed a disability claim with the Department of Veterans Affairs ("VA").  On March 17, 2008, the VA assessed plaintiff a permanent disability rating of 10 percent for his left knee injury effective February 13, 2007.  *Id*.

On March 18, 2007, plaintiff was hired as a staff anesthesiologist at the Sacramento VA Medical Center.  Defs.' Mot. for Summ. J. (ECF No. 40) Ex. A, No. 1.  He was originally appointed to a one-year term, which was subsequently renewed for a term not to exceed March 18, 2009.  *Id*. at Nos. 2,4.  On November 11, 2007, plaintiff was promoted to Chief of Anesthesiology at the Sacramento VA Medical Center.  *Id*. at No. 3.

On April 24, 2008, multiple staff anesthesiologists wrote a letter to plaintiff expressing various concerns.  ECF No. 42, Ex. B.  Included in the letter were requests that plaintiff pursue proposals for new internists, anesthesia technicians and additional anesthesiologists; make call schedules well in advance; provide an agenda for weekly meetings; assign an interim chief during plaintiff's absence; and make the daily schedule for operating rooms and cases more realistic; make calendar of daily staffing assignments to avoid errors in room assignments.  *Id.* On September 10, 2008, four of the anaesthesiologists that signed the April 24, 2008 letter sent plaintiff a followup letter stating that plaintiff failed to adequately address the concerns that were outlined in the prior letter.  ECF No. 42, Ex. D.

On April 28, 2009, plaintiff injured his left knee while squatting down to reach under an operating room table for a patient's Foley catheter.  Defs.' Reply (ECF No. 45), Am. Ex. C at 177:6-10.  Due to his injury, plaintiff sought worker's compensation benefits.  ECF No. 42, Ex. G.  His claim was approved and he took leave from work beginning May 26, 2009 to have surgery on his knee, which was performed on June 2, 2009.  *Id.* at Ex. H.  Plaintiff returned to work on July 12, 2009.  Compl. ¶ 19.

According to the plaintiff, when he returned to work he was subjected to a hostile and abusive work environment.  *Id.* at ¶¶ 32, 41.[3]  He claims that on July 13, 2013, Dr. Hundahl came by plaintiff's office and yelled at him because the working conditions deteriorated while he was on leave.  *Id.* at ¶ 19.  After returning from leave, plaintiff was required to work extra on-call shifts.  *Id.* at ¶ 21.  Allegedly, Dr. Hundahl also would not respond to plaintiff's emails, nor

---

[3]  Plaintiff's complaint contains causes of actions brought under the Rehabilitation Act and FMLA.  Under both causes of action, plaintiff alleges that he was subjected to a "hostile and abusive work environment."  Compl. ¶ 32,41.  The complaint, however, does not contain a separate cause of action asserting a hostile work environment claim.  At the January 24, 2013, hearing, the court stated to plaintiff's counsel that it did not read the complaint as containing a hostile work environment claim.  When asked if the court was reading the complaint correctly, counsel responded "yes."  ECF No. 56.  Although defendants argue that they are entitled to summary judgment on plaintiff's hostile work environment claim, defense counsel has confirmed that there is no such claim before the court.

1    would he agree to meet with plaintiff.  *Id*. at ¶ 22.  Plaintiff says he was also excluded from the

2    interviewing and hiring process for a staff anesthesiologist position that was available in Fall

3    2009.  *Id*. at ¶ 23.

4           On December 1, 2009, plaintiff resigned form his position as Chief of Anesthesiology.

5    ECF No. 42, Ex. M.  In his resignation letter, he stated that it was his desire to serve as a staff

6    anesthesiologists as he was originally hired to do.  *Id*.  On January 6, 2010, at a meeting attended

7    by plaintiff, Dr. Hundahl and Surgical Service Administrative Officer Carol Ross, plaintiff was

8    provided a letter that acknowledged receipt of plaintiff's letter of resignation.  *Id*. at Ex. P.  The

9    letter also informed plaintiff that his "time-limited appointment with the VA expires on March

10   18, 2010 and that it will not be renewed."  *Id*.

11   III.    <u>MOTION FOR SUMMARY JUDGMENT</u>

12          A.    <u>Summary Judgment Standard</u>

13          Summary judgment is appropriate when it is demonstrated that there exists "no genuine

14   dispute as to any  material fact and the movant is entitled to a judgment as a matter of law."  Fed.

15   R. Civ. P. 56(a).  Under summary judgment practice, the moving party

16               always bears the initial responsibility of informing the district
                 court of the basis for its motion, and identifying those portions of
17               "the pleadings, depositions, answers to interrogatories, and
                 admissions on file, together with the affidavits, if any," which it
18               believes demonstrate the absence of a genuine issue of material
                 fact.
19

20   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).[4]

21          Summary judgment avoids unnecessary trials in cases with no genuinely disputed

22   material facts.  *See N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.

23   1994).  At issue is "whether the evidence presents a sufficient disagreement to require

24   ─────────────────────

25          [4] Although the court in *Celotex* cites to Federal Rule of Civil Procedure 56(c) for
     the basic summary judgment standard, that standard was moved to Rule 56(a) in the 2010
     amendments to the Rules.  *See* 2010 Amendment notes following Fed. R. Civ. P. 56, effective
26   December 1, 2010.

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex*, 477 U.S. at 323.

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56([a]), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In this regard, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. In attempting to establish the existence of a

1  factual dispute that is genuine, the opposing party may not rely upon the allegations or denials of

2  its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

3  admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R.

4  Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11.  It is sufficient that "the claimed factual dispute

5  be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."

6  *T.W. Elec. Serv.*, 809 F.2d at 631.

7        Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the

8  proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587

9  (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  However, the

10  opposing party must demonstrate with adequate evidence a genuine issue for trial.

11  *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989).   The opposing party must do

12  so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence

13  presented."  *Anderson*, 477 U.S. at 248, 252.  If the evidence presented could not support a

14  judgment in the opposing party's favor, there is no genuine issue.  *Id.*; *Celotex*, 477 U.S. at 323.

15        In resolving a summary judgment motion, the court examines the pleadings, depositions,

16  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R.

17  Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at

18  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

19  drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences

20  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

21  predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F.

22  Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

23  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

24  some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could

25  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

26  trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

B.  Analysis

1.  Rehabilitation Act Claim Against the Secretary

The Rehabilitation Act, 29 U.S.C. §§ 701 *et seq*., prohibits discrimination on the basis of disability by various federal contractors and recipients of federal funds and makes all Title VII rights and remedies available to a person complaining of employment discrimination on the basis of disability.  *See Boyd v. U.S. Postal Serv*., 752 F.2d 410, 412-13 (9th Cir. 1985); 29 U.S.C. § 791(a)-(b).  The implementing regulations of the Rehabilitation Act provide that federal agencies "shall give full consideration to the hiring, placement, and advancement of qualified individuals with disabilities."  29 C.F.R. § 1614.203(a).  The regulations further specify that the standards used to determine a violation of the Rehabilitation Act are those set out in the ADA relating to employment.  *Id*. § 1614.203(b); *see also Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002).

This circuit has generally applied the McDonnell Douglas three-part burden shifting test to discrimination claims under the Rehabilitation Act.  *See Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1175 (9th Cir. 1998).  Under this test, a plaintiff is required to first establish a prima facie case of discrimination.  If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision.  Once the employer does so, the plaintiff then bears the burden of proving that the proffered reason is a pretext for discrimination.[5]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

Defendants argue that plaintiff's claim fails as a matter of law under the McDonnell Douglas three-part burden shifting test.  Defs.' Mem. of P&A ISO Mot. for Summ. J. (ECF No. 42-1) 17-29.  Defendants further argue that the Secretary cannot be held vicariously liable for the

/////

---

[5]  "[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination."  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).  Plaintiff does not contend that "direct" evidence supports his discrimination here.  The court therefore employs the *McDonnell Douglas* test.

conduct of Dr. Hundahl because he was not a "supervisor" as that term has been defined by the United States Supreme Court.[6]

a.    McDonnell Douglas Test

I.    Prima Facie Claim

To establish a *prima facie* claim of disability discrimination under the Rehabilitation Act, plaintiff must demonstrate that: (1) he is an individual with a disability within the meaning of the Rehabilitation Act; (2) he can perform the essential functions of the position with or without reasonable accommodation; and (3) his employer discriminated against him, via an adverse employment action, solely because of his disability. *See Mustafa*, 157 F.3d at 1174-76; *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1058 (9th Cir. 2005). Here, the Secretary does not dispute that plaintiff can establish the second and third elements of a prima facie discrimination claim.[7] He does contend, however, that plaintiff is unable to establish that he has a disability as that term is defined under the Rehabilitation Act. ECF No. 42-1 at 12.

"The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disability Act ('ADA')." *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004). The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12101(1).

---

[6] This argument is contained in a notice defendants filed with court on June 28, 2013. *See* ECF No. 91. The argument is predicated on the Supreme Court's recent ruling in *Vance v. Ball State Univ.*, 133 S.Ct. 2434 (2013). Since that case was not decided at the time defendants moved for summary judgment, and plaintiff has an opportunity to respond to this argument, the court will address the argument.

[7] The Secretary argued at length in the opening brief that plaintiff is unable to show a prima facie claim for disability discrimination because plaintiff cannot establish that he suffered an adverse employment action. ECF No. 42-1 at 18-23. However, in his reply, the Secretary concedes that the non-renewal of plaintiff's employment was an adverse employment action. ECF No. 45 at 5 ("Plaintiff agrees that the only adverse employment action at issue in this ligation is the non-renewal of his temporary employment").

1    The Secretary first argues that plaintiff cannot establish he is an individual with a

2    disability within the meaning of the Rehabilitation Act because the April 2009 injury sustained

3    to plaintiff's knee was only temporary.  ECF No. 42-1 at 23.  The argument is predicated on his

4    belief that "the only 'disability' for which plaintiff claims discrimination is his April 2009

5    workplace knee injury and he has disclaimed any discrimination related to his active duty knew

6    injury."  *Id*; *see Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012) (finding that a

7    temporary injury of short duration is not a disability covered under the ADA).

8    The Secretary's argument is not without support in the record.  For example, the

9    Secretary points out that plaintiff  testified at his deposition that he was not discriminated against

10   prior to May 2009, when he took time off work to get his "knee fixed," Defs.' Reply (ECF No.

11   45) Am. Ex. C ("Pl.'s Dep.") 74:3-25, and that plaintiff also replied "yes" to the following

12   questions:

13           So the sole basis of your discrimination claim in this case is that you were
             discriminated against based on your disability.  Your disability is the knee injury
14           that happened in May 2009, correct?  That's what you're suing about; that you
             were discriminated against because of the knee injury that you had in May 2009.
15

16   *Id*. at 96:9-16.

17   Notwithstanding these admissions from plaintiff, a fair reading of plaintiff's deposition

18   transcript, without focusing solely on the isolated statements identified by the Secretary, reveals

19   that plaintiff does not allege he first became disabled in April 2009.  Rather, plaintiff's testimony

20   indicates that he did not *perceive any discrimination* until after he returned from leave in 2009,

21   not that he became disabled in 2009.  *See id.* at 74:3-25.  For example, plaintiff testifies that he

22   was discriminated against because he "took time off to get my knee fixed."  Furthermore, the

23   record contains sufficient evidence demonstrating that plaintiff had a significant impairment in

24   his left knee prior to April 2009.  In his opposition to defendants' motion, plaintiff submitted a

25   disability rating decision issued by the VA on March 17, 2008.  ECF No. 44-2 at 23 (Ex. E).

26   /////

9

The decision states that plaintiff injured his knee in March 1989, and underwent arthroscopy with shaving of the lateral meniscus the following month. *Id.* Plaintiff also testified that his knee impairment prevented him from running, even before the 2009 injury. Pl.'s Dep. 75:10-12. While hardly conclusive, this evidence is sufficient to allow a jury to find that plaintiff has more than a temporary injury to his knee.

The Secretary also contends that plaintiff is unable to establish that he has a disability because he cannot show that his active duty knee injury substantially limits a major life activity. ECF No. 45 at 7-9. As previously discussed, the Rehabilitation Act uses the same standards applied under the ADA. *Coons*, 383 F.3d at 884. The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12101(1).

Prior to Congress amending the ADA in 2008, the United States Supreme Court held that the Act was to be strictly construed so that an individual was "substantially limited" only where he had "an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg. Ky., Inc. v. Williams*, 534 U.S. 184, 185 (2002). The ADA Amendment Act of 2008 ("ADAAA"), specifically sought to broaden the scope of disabilities covered under the ADA by rejecting the Supreme Court's interpretation of the Act. *See* Pub. L. 110-325, 122 Stat. 3553 (finding that Supreme Court precedent, e.g. *Toyota*, 534 U.S. 184 and *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999), which narrowed the term "substantially limits," was inconsistent with congressional intent and resulted in lower courts incorrectly finding that individuals with substantial limiting impairments were not disabled.)

The ADAAA provides that "the definition of disability in this Act shall be construed in favor of broad coverage of individuals under this Act." 42 U.S.C. § 12102(4)(A). The Act states that "'substantially limits' shall be interpreted consistently with the findings and purposes of the

ADA Amendments Act of 2008." 42 U.S.C. § 12102(4)(B).  The Equal Employment

Opportunity Commission's ("EEOC") regulations provide that "[t]he primary object of attention

in cases brought under the ADA should be whether covered entities have complied with their

obligations and whether discrimination has occurred, not whether an individual's impairment

substantially limits a major life activity.  Accordingly, the threshold issue of whether an

impairment 'substantially limits' a major life activity should not demand extensive analysis." 29

C.F.R. § 1630.2(j)(1)(iii).

Plaintiff's disability rating decision from the Department of Veterans Affairs provides,

among other things, that he has a 10 percent VA disability rating for injuries sustained to his left

and right knees.  ECF No. 44-2 at 23-24 (Ex. E).  In addition to plaintiff's testimony that he was

not able to run prior to April 2009 due to active duty injury, Pl.'s Dep. 75:10-12, plaintiff's

responses to interrogatories, verified under penalty of perjury, assert that his active duty injury

precludes him from running and squatting.  ECF No. 42, Ex. R, Resp. No. 2.

The Secretary does not argue that plaintiff has failed to establish a genuine issue as to

whether his knee impairment substantially limits his ability to run or squat.  Rather, relying on

42 U.S.C. § 12102(2), the Secretary argues that running and squatting are not major life

activities under the ADA.  ECF No. 42-1 at 24 n.2.  The secretary relies on several cases to

support the proposition that running and squatting are not major life activities.  *See Tompkins v.

County of Mineral*, 302 Fed. Appx. 666, 667 (9th Cir. 2008) (under prior ADA, running is not a

major life activity); *Gretillat v. Care Initiatives*, 481 F.3d 649, 654 (8th Cir. 2007) (under prior

ADA, squatting is not a major life activity), *Bellingham v. Harry & David Operations Corp.*,

2008 WL 339411, *4 (D. Or. 2008) (same).

42 U.S.C. § 12102(2) provides that "major life activities include, but are not limited to,

caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing,

lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating,

and working."  The Secretary correctly points out that 42 U.S.C. § 12102(2) does not specifically

identify running or squatting as major life activities.  *See* ECF No. 42-1 at 24 n.2.  However, the

list provided in section 12102(2) is not exhaustive.  *See id.* ("major life activities include, *but are*

*not limited to*, . . . .).  Furthermore, while squatting is not included on the list, one would be hard

pressed to dispute that the performance of numerous manual tasks, which are identified in the

list, requires at least some degree of squatting.  Moreover, given the manner in which plaintiff

reinjured his knee while performing his job, squatting appears to be an activity inherent in

functions that must be performed in the course of his job.

The various cases relied upon by the Secretary also fail to establish that running and

squatting are not major life activities.  Each of the cited cases were decided prior to the

enactment of ADAAA, and were therefore decided under the Supreme Court's holding that an

individual be found "substantially limited" only where he has "an impairment that prevents or

severely restricts the individual from doing activities that are of central importance to most

people's daily lives."  *Williams*, 534 U.S. at 185.  As preciously discussed, Congress enacted the

ADAAA to broaden the scope of disabilities covered under the Act.  *See* Pub. L. 110-325, 122

Stat. 3553.

While "[f]ew courts have had occasion to consider the effects of the ADAAA . . . [t]hose

that have[] apply it broadly to encompass disabilities that previously might have been excluded."

*Rico v. Xcel Energy, Inc.*, 893 F. Supp. 2d 1165, 1168 (D.N.M. Sept. 25, 2012) (quoting *Harty v.*

*City of Sanford*, No. 11–cv–1041 -Orl-31KRS, 2012 WL 3243282, *5 (M.D. Fla. Aug.8, 2012)).

Although running and squatting may not have previously been considered major life activities, in

light of the lower standard under the ADAAA, and the EEOC's regulations promulgating that

"[t]he primary object of attention in cases brought under the ADA should be whether covered

entities have complied with their obligations and whether discrimination has occurred, not

whether an individual's impairment substantially limits a major life activity," 29 C.F.R.

§ 1630.2(j)(1)(iii), the court can see no reason for their continued exclusion.  *See Farina v.*

*Branford Board of Educ.*, No. 09–CV–49, 2010 WL 3829160, *11 (D. Conn. Sept. 23, 2010)

1  (observing that "in light of recent amendments to the ADA–lowering the threshold requirement

2  to establish a 'disability' and including 'lifting' as a 'major life activity' . . . –it is possible that

3  even a relatively minor lifting restriction could qualify as a disability within the statute.").

4      Plaintiff has produced sufficient evidence to establish a *prima facie* claim.  The VA

5  rating decision shows that plaintiff injured his left knee in 1989.  ECF No. 42-2 at 23 (Ex. E).  It

6  is undisputed that plaintiff injured the same knee again in April 2009.  Pl.'s Dep. 178:18-179:8.

7  In plaintiff's response to interrogatories, plaintiff explains that the injury to his knee prevents

8  him from squatting and running.  ECF No. 42, Ex. R., Resp. No. 2.  Furthermore, plaintiff

9  testified during his deposition that his knee injury has always prevented him from running.  Pl.'s

10  Dep. 75:10-12.  Given that a plaintiff's burden of establishing a prima facie case is, under the

11  amendments to the Act, minimal, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, the court

12  finds this evidence sufficient to establish that plaintiff is an individual with a disability.[8]

13  Accordingly, plaintiff's evidence is sufficient to established a prime facie case.

ii.      Legitimate Nondiscriminatory Reason

15      The Secretary argues that there is a legitimate nondiscriminatory reason that plaintiff's

16  employment was not renewed.  Although not phrased this way, the Secretary essentially argues

17  that plaintiff's employment was not renewed because he failed to adequately perform his duties

18  as Chief of Anesthesia.  *See* ECF No. 42-1 at 25-28.

19      Defendant Hundahl testified that plaintiff failed to timely make on call schedules and

20  assign anesthesiologists to rooms ahead of time.  Defs.' Reply, Am. Ex. I ("Hundahl Dep.")

21  78:9-25.  He also stated that plaintiff failed to deconflict the schedule of leave requests, which

---

23    [8] Defendant further argues that employment forms signed by plaintiff establish that
plaintiff does not have a disability.  ECF No. 45 at 9.  In 2007, plaintiff signed a declaration

24  stating that he did not have a physical or mental impairment that would adversely affect his
ability to perform his job.  UMF 15.  He signed a similar declaration in January 2009.  UMF 16.

25  This evidence only establishes that plaintiff's impairment did not limit his ability to perform his
job.  The standard, however, is whether the impairment substantially limits a life activity, not

26  whether it interferes with one's ability to perform his job.

1    essentially means ensuring that an adequate number of anesthesiologists are available to perform

2    scheduled cases.  *Id*.  It is undisputed that as a result of plaintiff failing to deconflict the leave

3    schedule, surgeries had to be canceled and postponed because there were not enough

4    anesthesiologists to handle the scheduled cases.  *Id*. at 87:11-88:1, 98:13-99:15, 102:16-103:14;

5    Pl.'s Stmt. of Undisp. Facts (ECF No. 44-1) Nos. 25-27.  The record also contains letters drafted

6    by anesthesiologists in plaintiff's group that were critical of plaintiff's performance as Chief of

7    Anesthesia.  Defs.' MSJ, Exs. B, D.

8         Further, on August 31, 2009, plaintiff was given a written counseling for being Absent

9    Without Leave (AWOL) on August 26 because plaintiff failed to obtained approval to take leave

10   that day, did not report for duty, and did not call a supervisor to notify them that he would be

11   absent.[9]  ECF No. 42, Exs. K and L.  This evidence shows that plaintiff failed to adequately

12   perform his job duties and took leave without permission.  These are legitimate

13   nondiscriminatory reasons for not renewing plaintiff's employment.

14                              iii.    Pretext

15        Once an employer provides a legitimate, nondiscriminatory reason, the plaintiff then

16   bears the burden of proving that the articulated reason is a pretext for disability discrimination.

17   A plaintiff can demonstrate pretext by "directly persuading the court that a discriminatory reason

18   more likely motivated the employer[,] or indirectly by showing that the employer's proffered

19   explanation is unworthy of credence."  *Stegall v. Citadel Board. Co.*, 350 F.3d 1061, 1066 (9th

20   Cir. 2003) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (citation

21   omitted)).  "'Direct evidence is evidence which, if believed, proves the fact [of discriminatory or

22   retaliatory animus] without inference or presumption.'"  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d

23   1217, 1221 (9th Cir. 1998) (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir.

24   1994)).  "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to

25

26        [9]  Plaintiff also received a written counseling for being AWOL on August 27, 2009, but it
     was later rescinded.  ECF No. 42, Ex. L.

1    the actual motivation of the employer is created even if the evidence is not substantial." *Id*.  In

2    contrast, when direct evidence is unavailable, and the plaintiff proffers only circumstantial

3    evidence that the employer's motives were different from its stated motives, plaintiff must show

4    "specific" and "substantial" evidence of pretext to survive summary judgment. *Id*. at 1222.

5         The Secretary argues that plaintiff is unable to show that the proffered legitimate reasons

6    are pretextual, "particularly in light of the 'same-actor inference.'"  ECF No. 42-1 at 29.  The

7    same-actor inference provides that "where the same actor is responsible for both the hiring and

8    the firing of a discrimination plaintiff, and both actions occur within a short period of time, a

9    strong inference arises that there was no discriminatory motive." *Schechner v. KPIX-TV*, 686

10   F.3d 1018, 1026 (9th Cir. 2012).  The same-actor inference is a "strong inference" that must be

11   considered on summary judgment. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 271 (9th

12   Cir. 1996).  The Secretary contends that the same-actor inference applies to this case because Dr.

13   Hundahl recommended plaintiff's employment be renewed in March of 2010, which was less

14   than a year before plaintiff's employment expired.  ECF No. 42-1.

15        Assuming that the inference applies, plaintiff has submitted evidence to rebut the

16   inference.  Plaintiff testified that Dr. Hundahl specifically told him that his appointment would

17   not be renewed because he "missed too much work with [his] new injury and because I took too

18   much sick leave."  Pl.'s Dep. 172:2-7.  Although the statement may be disputed, if plaintiff's

19   account of the conversation is credited, the statement is direct evidence that plaintiff's

20   employment was not renewed because of his disability.  This evidence is sufficient to establish a

21   genuine dispute as to whether the Secretary's proffered reasons were pretextual.

22                    b.    <u>Vicarious Liability</u>

23        Relying on the Supreme Court's recent decision in *Vance v. Ball State Univ.*, 133 S.Ct.

24   2434 (2013), defendants argue that the Secretary cannot be held liable for the conduct of Dr.

25   Hundahl because he was not "a supervisor" as that term has been defined by the Supreme Court.

26   ECF No. 61.

The procedures for determining discrimination under Title VII have been incorporated into the Rehabilitation Act.  Under those procedures, an employment discrimination suit under Section 501 of the Rehabilitation Act must designate the "head of the department, agency, or unit" as the party defendant.  *See* 29 U.S.C. § 794a(a)(1); *Vinieratos v. Dep't of the Air Force*, 939 F.2d 762, 722 (9th Cir. 1991); *Mahoney v. U.S. Postal Serv.*, 884 F.2d 1194, 1196 n.1 (9th Cir. 1989) (noting the "Rehabilitation Act simply makes available to victims of handicap discrimination the rights and remedies embodied in Title VII" and that analysis regarding the appropriate defendant is the same under both laws).  Under Title VII, an employer is strictly liable where the harassing party is a "supervisor" and the harassment culminates in a tangible employment action.  *Vance*, 133 S.Ct. at 2439.  In *Vance*, the Supreme Court held that an employer may be held strictly liable for an employee's unlawful harassment only when the employer has empowered that employee to take tangible employment action against the victim, *i.e*, to effect 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"  *Id*. at 2243.

In support of their motion for summary judgment, defendants submit the declaration of Kelly Moore, a Human Resources Specialist for the VA-Northern California Healthcare Systems.  ECF No. 42, Ex. T.  Ms. Moore testified that "Dr. Hundahl is not empowered to make the final decision on hiring, firing, discipline or promotions.  Dr. Hundahl's role as Chief is to make recommendations to either the Chief of Staff or the Medical Center Director. . . ."  *Id*. ¶ 8.  She further testified that "Dr. Hundahl does not have the power to determine salaries, only to recommend them subject to approval by the Compensation Panel and others such as the Chief of Staff or the Medical Center Director."  *Id*.  Moreover, Dr. Hundahl is not responsible for making plaintiff's work schedule.  Rather, the work schedule was made by another member of plaintiff's anaesthesia group.  Pl.'s Dep. 88:18-89:19.

/////

1    While this evidence supports defendant's position that Dr. Hundahl was not granted the

2    authority to effect significant changes in plaintiff's employment status, there is evidence before

3    the court demonstrating that Dr. Hundahl had more control over plaintiff's employment than

4    discussed in the Moore declaration.  At the hearing on defendants' motion for summary

5    judgment, plaintiff pointed to emails sent between Dr. Hundahl, Chief of Staff Dr. William

6    Cahill, and Dr. Brain O'Neill, Director of VA Northern California Health System, as evidence

7    that Dr. Hundahl had the authority to not renew plaintiff's employment without seeking approval

8    from others.[10]  Dep. of Dr. William Cahill ("Cahill Dep.") Ex. 4.[11]  In an email addressed to Dr.

9    Cahill and Dr. O'Neill, Dr. Hundahl wrote, "As you know, I will not be renewing Dr. Bonzani's

10   1 year NTE contract."  Dr. O'Neill responded by stating "What does it mean that you won't be

11   renewing Bonzani's 1 year contract?  You mean he is losing his job?"  Dr. Hundahl's response to

12   Dr. O'Niell was, "Yes.  Bill [Cahill] is aware of some of the issues.  Suffice it to say that we've

13   experienced some serious performances issues and reliability issues."  *Id.*

14   This evidence is sufficient to create a genuine dispute as to whether Dr. Hundahl was

15   empowered to take tangible employment action or cause such action to be taken against the

16   plaintiff.  The evidence strongly suggests that it was Dr. Hundahl's actual decision, not merely

17   recommendation, that plaintiff's employment not be renewed.  Thus, there is a genuine dispute

18   as to whether Dr. Hundahl was a supervisor for purposes of plaintiff's Rehabilitation Act claim.

19   Accordingly, the Secretary is not entitled to summary judgment on this basis.

---

[10]  This argument was advanced in regards to plaintiff's FMLA claim, but is equally applicable to plaintiff's Rehabilitation Act claim.

[11]  At the hearing, plaintiff's counsel explained that these emails were attached as Exhibit 4 to the Deposition of Dr. William Cahill.  However, plaintiff's opposition makes no reference to the emails. Nor were they attached as exhibits to plaintiff's opposition.  On January 28, 2013, the court issued an order finding that the emails were not properly part of the record based on plaintiff's failure to comply with this court's local rules.  ECF No. 52; *see* E.D. Cal. Local Rule 133(j) ("Pertinent portions of the deposition intended to become part of the official record shall be submitted as exhibits in support of a motion or otherwise.")  Notwithstanding counsel's failure to comply with the court's local rules, the court held that it would consider the evidence and permitted supplemental briefing to address the emails.  ECF No. 52.

2.     Fair Medical Leave Act Claim Against All Defendants

Plaintiff's second claim is brought under § 2615(a)(1) of the FMLA against all

defendants.  Defendants contend that they are entitled to summary judgment on this claim

because leave was not used as a negative factor in the non-renewal of plaintiff's employment.

ECF No. 45 at 16.  Dr. Hundahl further contends that he is entitled to summary judgment on

plaintiff's FMLA claim because federal supervisors, such as Dr. Hundahl, may not be held

personally liable under the FMLA, he lacked sufficient control over plaintiff's employment to be

considered a supervisor, and he is entitled to qualified immunity.  ECF No. 42-1 at 35-57.

a.     FMLA claim as to all defendants

"The FMLA creates two interrelated substantive rights: first, the employee has a right to

use a certain amount of leave for protected reasons, and second, the employee has a right to

return to his or her job or an equivalent job after using protected leave." *Bachelder v. Am. W.*

*Airlines*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a), 2614(a)).  Congress

has made it unlawful for an employer to interfere with, restrain, or deny an employee's exercise

or attempt to exercise those rights.  29 U.S.C. § 2615(a)(1).

The Department of Labor's FMLA implementing regulations provide that "'[i]nterfering

with' the exercise of an employee's rights [under 29 U.S.C. § 2615(a)(1)] would include, for

example, not only refusing to authorize FMLA leave, but discouraging an employee from using

such leave," and that § 2615(a)(1)'s prohibition on "interference" also prohibits an employer

from discriminating or retaliating against an employee for having exercised or attempted to

exercise FMLA rights.  29 C.F.R. § 825.220(b), (c).  Such discrimination or retaliation includes

"us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring,

promotions or disciplinary actions . . . ." *Id*. § 825.220(c); *see also Liu v. Amway Corp.*, 347

F.3d 1125, 1133 (9th Cir. 2003) (providing that "any violation . . . of the DOL regulations

constitute[s] interference with an employee's rights under the FMLA."); *Bachelder*, 259 F.3d at

1122 ("[e]mployers cannot use the taking of FMLA leave as a negative factor in employment

18

1   actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted

2   under 'no fault' attendance policies").

3          Defendants, citing their arguments made in support of summary judgment on plaintiff's

4   Rehabilitation Act claim, argue that their evidence establishes that there were legitimate reasons

5   for allowing plaintiff's appointment to expire.  As discussed above, plaintiff's evidence creates a

6   genuine dispute as to the reasons why his employment was not renewed.  While defendants have

7   presented evidence that plaintiff was derelict in his duties as Chief of Anesthesia, plaintiff also

8   testified that Dr. Hundahl told him that his employment contract was not renewed because he

9   "missed too much work with [his] new injury and because [he] took too much sick leave."  Pl.'s

10  Dep. 172:2-7.  The parties do not dispute that the leave plaintiff took due to his injury qualified

11  as protected leave under the FMLA.  Accordingly, there is a genuine dispute as to whether

12  defendants retaliated against plaintiff for exercising his rights to take protected leave.

13              b.   Dr. Hundahl's liability under the FMLA

14          Dr. Hundahl argues that he is entitled to summary judgment on plaintiff's FMLA claim

15  because only employers can be held liable for violation of the FMLA and Dr. Hundahl, as a

16  supervisor for a public agency, does not satisfy the FMLA's definition of employer.  ECF No.

17  42-1 at 38-48.  Essentially, defendants are seeking reconsideration of this court's September 11,

18  2012 order denying their motion to dismiss plaintiff's FMLA claim against Dr. Hundahl.  The

19  court ruled that "[b]ecause the [Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.]

20  provides that an employer includes 'any person acting directly or indirectly in the interest of an

21  employer in relation to an employee and includes public agency,' this court agrees that the

22  FMLA similarly permits individual liability against supervisors at public agencies."  ECF No. 41

23  at 9.  Defendants' current motion essentially rehashes the arguments presented in the prior

24  motion to dismiss and fails to present any new evidence or intervening change in the law that

25  warrants reconsideration.  *See* E.D. Cal. L.R. 230(j) (requiring a party seeking reconsideration of

26  /////

1   an order to explain what new or different facts or circumstances exist that did not exist at the

2   time of the prior motion).

3                        I.      Requisite Level of Authority

4          Defendants further argue that even assuming a supervisor of a federal agency can

5   constitute an employer under the FMLA, Dr. Hundahl is still entitled to summary judgment

6   because he did not exercise the requisite level of authority over plaintiff's employment to be

7   considered an employer.  To determine whether an individual is an employer under the FLSA,[12]

8   the Ninth Circuit applies a four-factor "economic reality" test that considers: "Whether the

9   alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

10  employee work schedules or conditions of employment, (3) determined the rate and method of

11  payment, and (4) maintained employment records." *Lambert v. Ackerley*, 180 F.3d 997,

12  1001–02, 2012 (9th Cir. 1999).  Thus, an individual officer, director, or supervisor may be held

13  liable as an employer under the FLSA where the evidence supports a determination that the

14  individual exercised economic and operational control over the employment relationship.  *Id*. at

15  1012 (CEO and COO properly deemed employers under the FLSA where they had a significant

16  ownership interest as well as operational control of significant aspects of the company's

17  day-to-day functions, the power to hire and fire employees, the power to determine salaries, and

18  responsibility for maintaining employment records); *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th

19  Cir. 2009) (finding that a defendant responsible for handling labor and employment matters, who

20  also held 30% ownership over a company, was an "employer" under the FLSA); *Biggs v. Wilson*,

21  1 F.3d 1537, 1538 (9th Cir.1993) (finding that a state's failure to issue state employees'

22  paychecks until after a state budget was passed by the legislature and signed by the Governor

23  demonstrated the "economic reality" of being a state employee, and was therefore a violation of

24  _____

25        [12]  The court's September 11, 2012 order relied on the similarity of the FMLA's and the
     FLSA's definition of employer in holding that a supervisory can be held liable.  ECF No. 41 at 9.
26   The court therefore employs the standard utilized under the FLSA to determine whether Dr.
     Hundahl had sufficient control to be an employer under the FMLA.

the FLSA); *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) (corporation's president personally liable where he had ultimate control over business' day-to-day operations and was the corporate officer principally in charge of directing employment practices); *Ulin v. ALAEA–72, Inc.*, 2011 WL 723617, at *11 (N.D. Cal. Feb.23, 2011) (finding an individual personally liable as an employer under the FLSA when the individual "was responsible for posting, calculating, measuring, estimating, recording, or otherwise determining the hours worked by Plaintiff, and wages paid him," and "authorized and issued payments to Plaintiff, supervised Plaintiff's work, and was responsible for recruiting, hiring, firing, disciplining, assigning jobs and setting wages for Plaintiff"); *Solis v. Best Miracle*, 709 F. Supp. 2d 843, 847 (E.D. Cal.2010) (finding that a manager who had the authority to hire and fire employees, instructed employees to falsify their time cards, maintained employment records, filled out time and wage sheets, signed paychecks, and "paid all the bills" was an "employer" under the FLSA).

Dr. Hundahl argues that he does not have the requisite authority under the economic reality test because he has no ownership interest in the VA and he does not have the power to make final decisions on hiring, firing, discipline or promotion. ECF No. 42-1 at 37. Obviously Dr. Hundahl does not have an ownership interest in the VA. Nor does any individual and that prong of the analysis for a private employer simply has no relevance here. The VA employs numerous individuals to serve the medical needs of the this country's veterans. If this factor was dispositive under these circumstances, a federal employer could never be held liable for violating a government employee's rights under the FMLA.

Turning to a more relevant factor, Dr. Hundahl contends that he only has the authority to make recommendations, which are subject to the approval of the Chief of Staff. *Id.* As previously discussed, there is a genuine dispute as to the amount of control Dr. Hundahl exercises over plaintiff's employment. Although the declaration of Ms. Moore indicates that Dr. Hundahl is only permitted to make recommendations concerning significant changes in employment status, ECF No. 40, Ex. T, that contention is at odds with the emails Dr. Hundahl's

1  sent to Drs. Cahill and O'Neill, Cahill Dep., Ex. 4.  These emails specifically stated that "I will

2  not be renewing Dr. Bonzani's" employment.  *Id*.  The emails further indicated that Dr. O'Neill,

3  the Director of VA Norther California Health Systems, was not even aware that a decision had

4  already been made to not renew plaintiff's employment.  *Id*.  (""What does it mean that you

5  won't be renewing Bonzani's 1 year contract?  You mean he is losing his job?").

6      This evidence is sufficient to allow a trier of fact to discredit the assertion that Dr.

7  Hundahl did not, in fact, make the decision in question.  If a trier of fact finds that the emails

8  drafted by Dr. Hundahl reflect the true nature of his role and authority in deciding whether to

9  terminate an employee, he or she could reasonably conclude that Dr. Hundahl has sufficient

10 control over plaintiff's employment to be considered an employer.  Accordingly, Dr. Hundahl is

11 not entitled to summary judgment on this basis.

12                          ii.    Qualified Immunity

13      Lastly, Dr. Hundahl contends that he is entitled to qualified immunity.  ECF No. 48-49.

14 "The doctrine of qualified immunity protects government officials from liability for civil damages

15 insofar as their conduct does not violate clearly established statutory or constitutional rights of

16 which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

17 In analyzing qualified immunity, which is "an entitlement not to stand trial or face the other

18 burdens of litigation," the court employs a two-prong analysis.  *Saucier v. Katz*, 533 U.S. 194,

19 201 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009) (courts have

20 discretion to decide which of the two *Saucier* prongs to address first).  First, a court must

21 determine whether there was a violation of a constitutional or statutory right.  *Person*, 555 U.S. at

22 231.  Second, the court must determine whether the right was clearly established at the time of the

23 defendant's alleged misconduct.  *Id.*

24      Defendants first contend that Dr. Hundahl is entitled to qualified immunity because it was

25 not clearly established that his conduct constituted interference under the FMLA.  ECF No. 42-1

26 at 50.  Specifically, defendants argue that it was not clear that yelling at plaintiff, not returning

1  emails and phone calls, and not allowing plaintiff to participate on an interview panel, are

2  actionable offenses under the FMLA.  *Id*. at 51.  This argument overlooks the fact that the

3  interference at issue for plaintiff's FMLA claim is the non-renewal of plaintiff's employment

4  subsequent to taking leave.  Furthermore, it cannot reasonably be argued that there is some doubt

5  or ambiguity over the legality of an employer considering an employees use of FMLA leave in

6  deciding whether to renew the employment.  29 C.F.R. § 825.220(c) ("[E]mployers cannot use the

7  taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or

8  disciplinary actions. . . . ").  The law is clearly established that use of such leave may not serve as

9  a basis for termination of employment.

10      Defendants also argue that Dr. Hundahl is entitled to qualified immunity because it was

11  not clearly established that public employees are subject to individual liability under the FMLA.

12  ECF No. 42-1 at 51-53.  In *Modica v. Taylor*, 465 F.3d 174, (5th Cir. 2006), the Fifth Circuit

13  Court found that the defendant was entitled to summary judgment because it was not settled

14  whether an individual was subject to liability under the FMLA.  The court stated:

15      [I]ndividual public employee liability is a subject of much debate among the courts
        of appeals. *See, e.g., Mitchell, 343 F.3d at 832; Wascura*, 169 F.3d at 687; Darby,

16      287 F.3d at 681.  Although today we join those courts that hold that public
        employees are subject to individual liability under the FMLA, in the absence of a

17      prior ruling by the Supreme Court, this court, or a consensus among our sister
        circuits, we cannot say that the law was clearly established . . .  Therefore,

18      [defendant] is entitled to qualified immunity against [plaintiff's] FMLA claim
        because it was not clearly established that public employees are subject to

19      individual liability under the FMLA.

20  *Id*. at 832.

21      The Tenth Circuit, however, has reached a contrary conclusion.  In *Gray v. Baker*, 399

22  F.3d 1241, 1245 (2005), the defendants argued that they were entitled to qualified immunity

23  because it was not clearly established that they were subject to liability as individuals under the

24  FMLA.  *Id*. at 1244.  In finding that the defendants had not asserted a qualified immunity defense,

25  the court stated:

26  /////

1  [W]e are not persuaded the defense asserted by [defendants] to [plaintiff's] FMLA
2  claim can legitimately be characterized as a claim of qualified or "good faith"
   immunity.  Qualified immunity is a judicially-created defense that shields public
3  officials from civil liability based on having acted in good faith in the exercise of
   their duties. *See generally Harlow v. Fitzgerald*, 457 U.S. 800, 815-19, 102 S.Ct.
4  2727, 73 L.Ed.2d 39(1982).  Here, in contrast, the defense asserted by [defendants]
   does not hinge on their having acted in good faith in their dealings with [plaintiff].
5  In other words, [defendants] are not claiming, and indeed cannot claim given the
   clear requirements of the FMLA, they were unaware that a particular course of
6  conduct would be violative of the FMLA.  Instead, [defendants] are claiming they
   cannot be sued at all given their legal interpretation of the statutory term
7  "employer," as defined by the FMLA.  At bottom, the question of whether the
   defendants are subject to individual liability under the FMLA is one of statutory
8  construction that had no bearing on the decisions defendants made with respect to
   Gray.

9  *Id.* That analysis is compelling.  The question is not whether it is clear the individual could be

10 held liable for the alleged wrongful act, but rather whether the act is, indeed wrongful.  To hold

11 otherwise would permit a defendant to knowingly engage in unlawful conduct that would subject

12 his employer to liability, but provide immunity to the defendant simply because it was unclear

13 whether he could be held individually liable.  This inequity would not support the purpose of

14 providing immunity to those individuals who act in good faith.  The qualified immunity analysis

15 focuses on whether the right the public official violated is clearly established, not whether it is

16 clearly established that an individual liability attaches.  *See Pearson*, 555 U.S. at 232 (2009)

17 ("The doctrine of qualified immunity protects government officials from liability for civil

18 damages insofar as their *conduct does not violate clearly established statutory or constitutional*

19 *rights* of which a reasonable person would have known.") (emphasis added).  Accordingly, the

20 court finds that Dr. Hundahl is not entitled to qualified immunity on this basis.[13]

21

22    [13]  Included with defendants' motion for summary judgment are arguments addressing
   what evidence plaintiff may present at trial.  Defendants first argue that plaintiff should not be
23 able to seek damages for lost retirement or other benefits because plaintiff failed to include a
   computation of these damages in his initial disclosures as required by Federal Rule of Civil
24 Procedure 26(a)(iii).  ECF No. 42-2.  Defendants allege that it was not until plaintiff disclosed
   his expert witness on September 14, 2012, that he revealed that he was seeking a total of
25 $656,936 in damages for lost benefits.  Defendants request the imposition of sanctions as
   permitted by Federal Rule of Civil Procedure 37(c)(1) based on plaintiff's failure to comply with
26 the initial disclosure requirements delineated in Rule 26(a).  The court's scheduling order

1    IV.    CONCLUSION

2           For the reasons stated above, it is hereby ORDERED that defendants' motion for

3    summary judgment (ECF No. 42) is denied.

4    Dated:  September 30, 2013.

5

6                                        EDMUND F. BRENNAN
                                         UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20   _____

21   required that all discovery disputes be resolved by August 31, 2012.  ECF No. 32 at 3.
     Defendants have not sought modification of the court's scheduling order.  Accordingly,
22   defendants' motion for sanctions pursuant to Rule 37(c)(1) is denied without prejudice to any
     motion seeking modification of the court's scheduling order pursuant to Fed. R. Civ. P. 16(b)(4).
23   *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09; *see also Stell v. Jordan*, 85
     Fed. Appx. 641, 2004 WL 68700 (9th Cir. 2004)(unpublished).
24           Defendants also argue that plaintiff's expert witness should be disqualified form
     testifying about plaintiff's lost benefits because he is not qualified to give an opinion on benefits
25   under the Federal Employees Retirement System and his opinion is based on speculation.  ECF
     No. 42-1 at 57-62.  This argument addresses what evidence should or should not be admitted at
26   trial and is deferred to an appropriate motion in limine.